IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JESSIE TOMPKINS,⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀Plaintiff,⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀⠀CASE NO. 2:10cv1015-MEF
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
JIMMY BARKER, *et al.*,⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀Defendants.⠀⠀⠀⠀)

## AMENDED REPORT AND RECOMMENDATION

This Recommendation will amend the Report and Recommendation entered by the Court on July 13, 2011 (Doc. #53). Accordingly, the Report and Recommendation is amended as follows:

Before the Court are numerous motions in this case, including the motions to dismiss (Docs. #27, 31, and 40) filed by Defendants, Plaintiff's responses to those motions (Docs. #33, 37, 38, 42, and 49), and several motions filed by Plaintiff, including "Plaintiff's Petition for Emergency Preliminary Injunction" (Doc. #44), "Plaintiff's Motion for Leave to Add Defendant Joseph Morton" (Doc. #45), "Plaintiff's Motion for Leave to File his Second Amended Complaint" (Doc. #46), and "Plaintiff's Motion for Protective Order" (Doc. #48).

## I.⠀⠀BACKGROUND

Plaintiff filed his initial Complaint (Doc. #1) in this Court on November 30, 2010. On December 3, 2010, the District Judge referred this matter to the undersigned Magistrate Judge "for all pretrial proceedings and entry of any orders or recommendations as may be

appropriate." Order (Doc. #3). Upon review of the initial complaint, the undersigned entered an Order (Doc. #4) requiring Plaintiff to file an amended complaint. On December 27, 2010, Plaintiff filed his Amended Complaint (Doc. #5) and an accompanying "Statement of Facts" (Doc. #6).

On its face, the Amended Complaint is predicated on Title VII of "the Civil Rights Act of 1964, 42 U.S.C. [§] 1983, 2000(e), 2000(d), 6101, 1985 and 20 U.S.C. [§] 1681 alleging employment discrimination and retaliation in federal funded programs." Amended Complaint (Doc. #5) at 2. The Amended Complaint purports to present several counts, including the following: 1) employment discrimination in violation of Title VII of the Civil Rights Act of 1964 (Count One), Amended Complaint at ¶¶ 24-64; 2) a violation of "Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688" (Count Two), Amended Complaint at ¶¶ 65-73; and 3) what appears to be a charge of conspiracy in violation of 42 U.S.C. § 1985 (Count Three ), Amended Complaint at ¶¶ 74-87.

As set forth in the Amended Complaint and Plaintiff's "Statement of Facts," Plaintiff was formerly employed by the Montgomery County Board of Education as a physical education teacher/coach. Plaintiff's employment was terminated in June, 2009, and administrative proceedings related to the termination concluded sometime in 2010. The named defendants in this action are most easily viewed as three separate entities: the "Board Defendants" consisting of the Montgomery County Board of Education, the Board members, and certain named employees of the Board; the "Hearing Officer" who presided over

2

Plaintiff's administrative challenge to his termination, Don E. Williams; and an attorney who represented the Alabama Education Association, Charles Norton.

Each of these three classes of Defendants has moved to dismiss the Amended Complaint pursuant to Rule 12(b)(6), contending that Plaintiff has failed to state a claim upon which relief can be granted.  In particular, the Board Defendants argue that Plaintiff's Title VII claims are not timely and may not be sustained against the individual defendants, that Plaintiff's Title IX claims "should be dismissed because Title IX does not address the alleged employment actions," and that Plaintiff's "Section 1983 claims should be dismissed because 1) the Alabama Supreme Court has already addressed his procedural due process claims[,] 2) [his] complaint does not meet the heightened pleading standard[,] and 3) the Section 1983 official capacity claims are duplicative to the claims against the Board."  Board Defendants' Motion to Dismiss (Doc. #27) at 4.  Defendant Williams's motion to dismiss largely mirrors the grounds asserted by the Board Defendants and also contends that the Title VII claims can not be sustained against Williams because Plaintiff was not an employee of Williams and that Williams "is immune from civil liability for acts done in his arbitral capacity."  Williams's Motion to Dismiss (Doc. #31) at 3.  Finally, Defendant Norton asserts that the Amended Complaint should be dismissed because Plaintiff may not maintain a Title VII or Title IX action against him, that Plaintiff fails to state a cognizable 42 U.S.C. § 1985 claim as to Norton, that any procedural due process claims set forth in the Amended Complaint are barred by *res judicata*, and that Plaintiff has not even stated a claim against

Norton pursuant to 42 U.S.C. § 1983.

## II.    DISCUSSION

Defendants' motions and Plaintiff's responses thereto raise a number of issues for consideration by the Court.  The Court will address them below.

### A.    Title VII issues.

#### 1.    Timeliness

The Board Defendants and Williams first contend that Plaintiff's Title VII claims fail to state a claim for which relief can be granted, and are therefore due to be dismissed, because the claims are untimely.  "Under Title VII, a plaintiff must file her complaint in the district court within 90 days of her receipt of a right-to-sue letter from the EEOC."  *Miller v. Georgia*, 223 F. App'x 842, 844 (11th Cir. 2007).  In this case, Defendants argued that, because Plaintiff's right-to-sue letter was issued on September 1, 2010, and hence likely received on or before September 4, 2010, his Amended Complaint, filed on December 27, 2010, is untimely.  Bd. Def.'s Mot. (Doc. #27) at 4-5; Williams Mot. (Doc. #31) at 8-9.  In response, Plaintiff asserts that his original Complaint (Doc. #1), filed on November 30, 2010, was timely for purposes of the relevant statute of limitations, and that the Amended Complaint should essentially "relate-back" to the date of the filing of the original complaint.  Pl.'s Response (Doc. #33) at 1.  In reply to Plaintiff's response, the Board Defendants, while ostensibly not conceding the timeliness issue, argue that, regardless of whether either complaint may be considered timely, it is still deficient in that Plaintiff fails to establish a *prima facie* case of discrimination under Title VII.  Bd. Def.'s Reply (Doc. #35) at 2-3.

Plaintiff's original Complaint, filed within ninety days of the receipt of his right-to-sue letter from the EEOC, alleged causes of action under Title VII.  Plaintiff's Amended Complaint, filed after the expiration of the ninety-day period, restates those claims with additional allegations and clarifications.  While the Amended Complaint does not "relate back" in the sense that it supplements the allegations of the original Complaint - indeed, it replaces them - the issue here is whether Plaintiff timely presented his claims of discrimination and retaliation.  Because Plaintiff timely filed his original Complaint and was required by the Court to file the Amended Complaint, and because the original Complaint timely presents at least the rudiments of his Title VII claims, the Amended Complaint "relates back" to the original Complaint.  *See* Fed. R. Civ. P. 15(c)(1)(B).  Thus, the Court finds that Plaintiff is not barred by the statute of limitations applicable to Title VII.[1]

---

[1]     The Board Defendants' argument about Plaintiff's purported failure to establish a *prima facie* case of discrimination is unavailing for purposes of arguing timeliness, as that is a completely separate inquiry.  Likewise, whether or not Plaintiff can establish a *prima facie* case of discrimination or retaliation is also distinct from the issue raised by Defendants' motions under Rule 12(b)(6) - whether Plaintiff has at least properly stated a claim for unlawful discrimination and/or retaliation under Title VII.  *See Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 515 (2002) ("we hold that an employment discrimination plaintiff need not plead a prima facie case of discrimination . . . in order to survive . . . [a] motion to dismiss."); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007) (reaffirming relevant portion of *Swierkiewicz* and commending district court's recognition that a "heightened pleading standard for Title VII cases was contrary to the Federal Rules' structure of liberal pleading requirements.") (quoting *Twombly v. Bell Atlantic Corp.*, 313 F. Supp.2d 174, 181 (S.D. N.Y. 2003)).  The Court is mindful of the requirement that the pleadings of *pro se* litigants are to be "liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 63 (11th Cir. 1998).  Though hardly a model of clear, effective pleading, the Court finds that some of Plaintiff's allegations at least very tenuously appear to state a claim of unlawful employment discrimination and/or retaliation.  *See* Amended Complaint (Doc. #5) at ¶¶ 39-40, 44 (describing Plaintiff's filing of a "grievance" detailing "sex discriminating" and his very prompt placement on "administrative leave" after filing the grievance); *id.* at ¶ 76 (alleging retaliation against Plaintiff by "the MCBOE" after he

### 2.    Proper parties to Plaintiff's Title VII claims.

Plaintiff does not clearly state in his Amended Complaint which named Defendants are parties to his Title VII claims.  Rather, the relevant portion of the Amended Complaint simply presents a litany of seemingly tangential factual allegations, many of which do not appear pertinent or probative of any Title VII claim, involving some of the named Defendants.  However, there are numerous relevant constraints on whom may properly be sued pursuant to Title VII.  First, "relief under Title VII is available against only the employer and not against individual employees whose actions would constitute a violation of the Act, *regardless* of whether the employer is a public company or a private company." *Dearth v. Collins*, 441 F.3d 931, 933 (11th Cir. 2010).  Hence, Title VII does not countenance individual capacity suits.  *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991).  Moreover, "official capacity" suits against individuals are redundant and inappropriate where the plaintiff has also sued his actual employer.  *See, e.g., Adams v. Cobb*

---

filed an EEOC complaint).

While the Board Defendants expressly argue that Plaintiff has not established a *prima facie* case of discrimination, for the reasons set forth above, that is an argument best suited for a motion for summary judgment. *See, e.g., Swierkiewicz*, 534 U.S. at 512 ("This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims.").  Perhaps anticipating this hurdle, and because of their filing of "exhibits outside of the pleadings," the Board Defendants request the alternative relief of summary judgment in their motion.  Bd. Def.'s Mot. (Doc. #27) at 1.  While the Court might properly convert the motion to one for summary judgment pursuant to Rule 12(d), the Court considers it most prudent to decline to treat the motion as one for summary judgment at this time, so that the parties may, if necessary, conduct discovery and present more fully developed summary judgment arguments at the appropriate time.

*County School Dist.*, 242 F. App'x 616, 617 (11th Cir. 2007) (noting lower court's dismissal, on redundancy grounds, of defendants named in official capacities where plaintiff also named employer); *Wheeles v. Nelson's Elec. Motor Serv.*, 559 F. Supp.2d 1260, 1267 (M.D. Ala. 2008); *Moss v. W & A Cleaners*, 111 F. Supp.2d 1181, 1186 (M.D. Ala. 2000) ("[W]hile official-capacity suits against an employer's agents are proper, such suits are unnecessary where a plaintiff has also sued the employer.  In other words, if a Title VII plaintiff names his or her employer as a defendant, any of the employer's agents also named in the complaint may be dismissed from the action.").

Applying these principles, Plaintiff's Title VII claims, to the extent he even intends to allege such claims against individuals not including the Montgomery County Board of Education, are due to be dismissed.  Defendants Williams and Norton are not Plaintiff's "employer" within the meaning of Title VII, as Williams was an independent hearing officer presiding over a hearing involving Plaintiff and Norton was an attorney representing the Alabama Education Association.  Plaintiff can sustain no Title VII claims against these Defendants.  The numerous other Defendants identified by Plaintiff, some sued in their individual as well as official capacities, are also subject to dismissal.  Plaintiff may not maintain individual capacity suits against these Defendants, including Defendants Barker, Brier, Ross, Porterfield, Snowden, Meadows, Sellers, Dawkins, Dilworth, Salter, Pharrams, Brown, and Slagle, under Title VII.  To the extent administrators, board members, and other employees of the Board of Education might be construed as "employers" subject to official

7

capacity suits under Title VII, because Plaintiff has also sued his employer, the Board of Education, his official capacity claims against the named Defendants are redundant and due to be dismissed.  Accordingly, to the extent the Amended Complaint presents any Title VII claims against any Defendant other than the Montgomery County Board of Education, such Defendant is due to be dismissed from this action.

**B.    Plaintiff's Title IX claim.**

Plaintiff purports to bring a claim under Title IX in Count Two of the Amended Complaint.  As codified, Title IX provides as follows: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefit of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681.  Title IX's prohibition on gender discrimination encompasses employment discrimination at federally funded educational institutions. *North Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 530 (1982).  The Supreme Court has recognized that Title IX implies "a private right of action to enforce its prohibition on intentional sex discrimination," which includes the right to monetary damages. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 173-74 (2005).  The implied right of action extends to claims of retaliation. *See id.* at 174 ("We conclude that when a funding recipient retaliates against a person *because* he complains of sex discrimination, this constitutes intentional 'discrimination' 'on the basis of sex,' in violation of Title IX.").

While Plaintiff might, in theory, bring a Title IX claim against one or more of the

named Defendants, Count Two of the Amended Complaint presents very few cogent allegations of fact addressing the discrete circumstances of any alleged Title IX violation. Plaintiff alludes to one Board member's postings on her Facebook page and remarks on a local radio talk show and then concludes that "[b]ecause the plaintiff is a black male, hired by MCBOE as a physical education teacher he was discriminated against as a  participant in a federal funded program."  Amended Complaint (Doc. #5) at ¶¶ 65-67.  The remainder of the allegations in Count Two consist of vague, boilerplate allegations about unspecified "unlawful employment practices," discrimination on the basis of "sex, age, race, and retaliat[ion]," denial of "equal employment opportunities," conspiracy to violate Plaintiff's rights, the various forms of damages Plaintiff has suffered, and the relief he seeks.  *Id.* ¶¶ 68-73.  Count Two also includes a paragraph noticing the incorporation of the Amended Complaint's previous allegations into Count Two.  *Id.* at ¶65.  Upon a review of those allegations, there is scant, if any, support for Plaintiff's Title IX allegation.  At one point Plaintiff vaguely alleges that he filed a grievance detailing "[s]ex discriminating in supplemental pay assignments for home bound students,"  and that a female teacher was "assigned the plaintiff home-bound students while the plaintiff was on leave." *Id.* at ¶¶ 44-45.  Other than these very vague and conclusory allegations, the Amended Complaint is devoid of the sort of factual allegations required to sustain a claim under Title IX.[2]

---

[2]      At one point, Plaintiff appears to complain of being "routinely harassed sexually," Amended Complaint (Doc. #5) at ¶ 35, but Plaintiff does not describe the particulars of any such harassment and does not explain how it might constitute actionable conduct pursuant to Title IX. Thus, the undersigned finds that this bare allegation is insufficient to state a claim for Title IX

Even assuming that Plaintiff has adequately stated a claim for relief, his Title IX claim faces an additional impediment.  Considering the meager relevant allegations that Plaintiff has provided leads to the inescapable conclusion that Plaintiff's Title IX claim is basically identical to his Title VII claim in that they are both premised on the same factual circumstances and legal theories, and seek the same remedies.  Plaintiff does not separately allege that he was denied participation in, or the benefit of, any particular program offered by his employer as a federally funded education provider.  Plaintiff does not allege that he was discriminated or retaliated against because of his protests of any gender-oriented discrimination inflicted on students, employees, or others associated with the Board.  There is simply no allegation of fact in the Amended Complaint which might be construed as setting forth a Title IX claim which is not predicated on the employment-related discrimination allegations supporting Plaintiff's Title VII claims.  Rather, his claim is simply that he "is a black male, hired by the MCBOE as a physical education teacher [and] was discriminated against as a participant in a federal funded program" due to some vaguely described employment practices of the Board.  Amended Complaint (Doc. #5) at ¶ 67.

In similar circumstances, some federal appellate courts have determined that, because Title VII provides an adequate remedy to address this sort of alleged gender-based discrimination in the workplace, the remedy available under Title VII preempts Title IX in cases where, like this one, a plaintiff seeks relief under both statutes.  *See, e.g., Lowery v.*

---

purposes.

*Texas A & M University System*, 117 F.3d 242, 248 (5th Cir. 1997); *Waid v. Merrill Area Public Schools*, 91 F.3d 857, 861-62 (7th Cir. 1996) (abrogated on other grounds, *Fitzgerald v. Barnstable School Committee*, 555 U.S. 246 (2009)); *Lakoski v. James*, 66 F.3d 751, 753 (5th Cir. 1995). While the Eleventh Circuit has not yet addressed this specific aspect of the relation between Title VII and Title IX, this Court, the Honorable Ira Dement, has previously held that where a plaintiff seeks relief for unlawful gender-based employment discrimination under Title VII, such plaintiff is precluded from seeking relief under Title IX for the same actions of her employer. *Blalock v. Dale County Bd. of Educ.*, 84 F. Supp.2d 1291, 1298 (M.D. Ala. 1999) (finding "Title VII preempts employment discrimination claims for money damages brought under Title IX. To hold otherwise would eviscerate Title VII's technical and administrative requirements, thereby giving plaintiffs who work at federally funded educational institutions unfettered ability to bring what are in reality Title VII sexual discrimination claims without adhering to the same rules required of every other employment discrimination plaintiff in the country."). *See also Wilborn v. Southern Union State Community College*, 720 F. Supp.2d 1274, 1302-1304 (M.D. Ala. 2010) (Thompson, J.) (acknowledging the "persuasive" holdings of numerous sister courts within this Circuit which are consistent with *Blalock*'s finding of preemption, but finding it unnecessary to resolve the issue in that case because the plaintiff was a student asserting education-related claims under Title IX in addition to her Title VII claims).

The undersigned finds these numerous authorities persuasive. The undersigned can

conceive of no reason why Congress would intend that a plaintiff-employee of a federally funded education institution be allowed to circumvent the unique legal and administrative requirements imposed on employees asserting identical employment discrimination claims under Title VII merely because the plaintiff is employed by a federally funded educational institution.  Plaintiff has not articulated any such reason, and Congress did not memorialize any such intent in the text of Title IX or Title VII, respectively.  *Lakoski*, 66 F.3d at 755-57.  Because Plaintiff has adequate remedies under Title VII for his employment-related discrimination and retaliation claims, and because he is indeed pursuing such remedies in this action, any Title IX claims purportedly raised by Plaintiff are preempted and due to be dismissed.[3]

### C.    Plaintiff's 42 U.S.C. § 1985 claim.

Count Three of the Amended Complaint appears to present Plaintiff's claims under § 1985.  Plaintiff first avers that § 1985 "grants a civil cause of action for damages by various types of conspiracies aimed at injuring a person in his/her person or property, or denying him/her a Federal right or privilege . . . ."  Amended Complaint (Doc. #5) at ¶ 75.  Plaintiff then proceeds to allege defendants "conspired" to injure him in some fashion.  *See id.* at ¶

---

[3]    Lastly, the undersigned notes that, even if Plaintiff's Title IX claims are not preempted, he can not sustain such claims against "individual school officials."  *Williams v. Bd. of Regents of Univ. Sys. Of Georgia*, 477 F.3d 1282, 1300 (11th Cir. 2007) ("Title IX does not allow claims against individual school officials; only funding recipients can be held liable for Title IX violations.").  Thus, the "individual school officials," as well as Defendants Williams and Norton, are not proper parties to Plaintiff's Title IX claims.  The only proper defendant to Plaintiff's Title IX claims - if it can be found that Plaintiff may proceed with such claims - is the Montgomery County Board of Education.

76 ("The defendants intentionally conspired to violate the plaintiff U.S. Constitutional Protected Rights under the 14th Amendment."), ¶ 77 ("[Defendant] Charles Norton conspired with MPS employees and the MCBOE to deprive the plaintiff of procedural due process of law, under the 14th Amendment.").  Finally, Plaintiff appears to attempt to set forth the criteria for alleging conspiracy claims under § 1985(1) & (2).  *Id.* at ¶¶ 80, 81.

Forty-two U.S.C. § 1985 addresses conspiracies to interfere with civil rights. Subsection one covers conspiracies by one or more persons to prevent a United States officer from performing his or her duties.  Subsection two deals with conspiracies to obstruct justice in court proceedings, including efforts to intimidate parties, witnesses, or jurors in such proceedings.  Subsection three addresses conspiracies to deprive persons of equal protection of the law or equal privileges and immunities under the law.  Although Plaintiff alludes to subsections one and two in his Amended Complaint, he does not provide any factual allegations supporting a claim pursuant to those two subsections.  Moreover, his subsequent pleadings make clear that his § 1985 claim is predicated on subsection three.  *See, e.g.,* "Plaintiff's Supplemental Response to Defendant' Charles Norton Motion to Dismiss" (Doc. #49) at 1-4.[4]  Hence, the Court will analyze Plaintiff's § 1985 claim within the context of subsection three only.

"To state a claim under § 1985(3), a plaintiff must allege: (1) defendants engaged in

---

[4]     Importantly, the only Defendant identified by name and alleged to have entered into such a conspiracy is Defendant Norton, the attorney representing the Alabama Education Association.  Amended Complaint (Doc. #5) at ¶ 77.

a conspiracy; (2) the conspiracy's purpose was to directly or indirectly deprive a protected person or class the equal protection of the laws, or equal privileges and immunities under the laws; (3) a conspirator committed an act to further the conspiracy; and (4) as a result, the plaintiff suffered injury to either his person or his property, or was deprived of a right or privilege of a citizen of the United States." *Jimenez v. Wellstar Health System*, 596 F.3d 1304, 1312 (11th Cir. 2010).  In addition, "[t]o state a claim for relief under § 1985(3), a plaintiff must establish that there was 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" *Smith v. Belle*, 321 F. App'x 838, 845 (11th Cir. 2009) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)).

Plaintiff alleges a conspiracy occurred involving unnamed "defendants" in response to his filing of an EEOC complaint and also a conspiracy involving Defendant Norton and "MPS employees and the MCBOE."  Amended Complaint (Doc. #5) at ¶¶ 76-77.  The only right identified by Plaintiff as having been denied him as a result of the conspiracy is his right to procedural due process.  *Id.*[5]  Count Three does not appear to set forth an allegation of any specific act by any defendant in furtherance of the alleged conspiracy.  Count Three also does not expressly allege that any purported conspiracy was motivated by the conspirators' racial

---

[5]    To the extent Plaintiff may have intended that his § 1985(3) claim be brought to allege a conspiracy to deprive him of the right to be from discrimination in his employment, such claim is unavailing.  *See Great American Federal Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 378 (1979) (holding that "deprivation of a right created by Title VII cannot be the basis for a cause of action under § 1985(3).").

or other "class-based" animus.[6]   Other allegations of the Amended Complaint, which Plaintiff incorporates into Count Three, provide additional context for his claim that he was denied procedural due process during the hearing on his termination.  *See* Amended Complaint (Doc. #5) at ¶¶47-55.  However, even these allegations do not lend support to Plaintiff's broad claim of a conspiracy under § 1985(3), as the allegations do not specifically identify the alleged conspirators, any overt acts in furtherance of the alleged conspiracies, or that the conspirators were motivated by racial animus.

Plaintiff's § 1985 claims are problematic in numerous respects.  To begin with, as set forth above, given the jumbled, confused presentation of his allegations, Plaintiff has failed to comply with Rule 8(a)'s requirement that he provide a short and plain statement of his claim showing that he is entitled to relief.  Furthermore, and as set forth above, it is not readily apparent that Plaintiff has even sufficiently alleged the requisite elements to support a claim under § 1985(3).  In other words, Plaintiff appears to deduce the existence of some overarching conspiracy to deprive him of certain rights due to the fact that he was terminated and he believes the process and the decision makers were tainted and not impartial.

---

[6]   Indeed, while Plaintiff's later pleadings indicate that "Defendants Don Williams and Charles Norton are both white males," Pl.'s Supp. Resp. (Doc. #42) at 3, Plaintiff does not expressly allege that Norton and Williams conspired together, or that Williams was even involved in any conspiracy.  Further, the Court notes that of the remaining defendants broadly alleged to have conspired against Plaintiff, a substantial number of the alleged conspirators are, like Plaintiff, African American.  While this fact may not, alone, be sufficient to dismiss Plaintiff's conspiracy claim, it is certainly relevant - given the otherwise confusing and conclusory manner in which the claim is presented - to a determination of whether Plaintiff adequately understands the law under which he is bringing suit and appreciates the requisite elements of the claims he alleges.

15

Conclusory allegations of this sort are not adequate to state a claim.  And, as discussed above, nowhere does the Amended Complaint allege that the alleged conspiracy was the product of the unspecified conspirators' racial or other class-based animus.  Rather, as Plaintiff himself states, he believes the alleged conspirators were motivated by "political and personal reasons."[7]  Amended Complaint (Doc. #5) at ¶ 47; *id.* at ¶ 61 (alleging defendants were concerned that Plaintiff could implicate them in efforts to cover-up "gang violence, lewd conduct and drugs activities" and consequently "were politically pressured to conspired and violate the plaintiffs rights to gainful employment under the fourteenth Amendment.").  Motivation of this type, however objectionable, is not cognizable within § 1985(3).  *Smith*, 321 F. App'x at 845-446 ("[Plaintiff] has alleged throughout that the defendants conspired against him in order to benefit financially.  For this reason, the district court did not err by dismissing [his] § 1985 claim.").  Finally, the only Defendant specifically identified as having engaged in a conspiracy to deprive Plaintiff of any protected right is an attorney whom Plaintiff does not allege was acting in any capacity other than as the attorney representing the Alabama Education Association.  The Eleventh Circuit has held that "as long as an attorney's conduct falls within the scope of the representation of his client, such conduct is immune from an allegation of a § 1985 conspiracy." *Farese v. Scherer*, 342 F.3d 1223, 1232 (11th Cir. 2003).  Given all of these considerations, it is apparent that Plaintiff

---

[7]     Plaintiff's reliance on the purportedly invalid "political and personal reasons" rationale supporting the Board's decision to terminate his employment appears to be stem from Alabama Code § 16-24-8, which sets forth the numerous bases upon which a teacher's contract may be cancelled but specifically prohibits cancellation due to "political or personal reasons."

has failed to state a claim for conspiracy under § 1985(3) for which relief could be granted. Accordingly, this claim, as to all Defendants, is due to be dismissed.

### D.     Plaintiff's 42 U.S.C. § 1983 claim.

Plaintiff does not present a separate count in the Amended Complaint which raises a § 1983 claim independent of the Title VII, Title IX, and § 1985 claims presented in Counts One through Three.  However, at various points in the Amended Complaint Plaintiff alludes to § 1983 as either a right conferring statute, *see* Amended Complaint (Doc. #5) at §§ 63-64, or as an enforcement mechanism for seeking redress for the violation of other protected rights, *see id.* at §§ 70, 85.

"In order to state a claim under § 1983, the plaintiff must show '(1) a violation of a constitutional right, and (2) that the alleged violation was committed by a person acting under color of state law.'" *Gottschalk v. Gottschalk*, 2011 WL 2420020 at *6 (11th Cir. June 16, 2011) (quoting *Holmes v. Crosby*, 418 F.3d 1256, 1258 (11th Cir. 2005)).  To the extent Plaintiff alleges a § 1983 claim solely as a remedy to vindicate a violation of the rights conferred on him under Title VII, *see* Amended Complaint (Doc. #5) at ¶¶ 64, 85, he has failed to state a claim for which relief may be granted.  *Charles v. Scarberry*, 340 F. App'x 597, 600 (11th Cir. 2009) ("an allegation of a Title VII violation cannot provide the sole basis for a section 1983 claim") (citing *Arrington v. Cobb County*, 139 F.3d 865, 872 (11th Cir. 1998)).  If Plaintiff intends to assert a § 1983 claim predicated on the alleged violation of some protected right outside of those conferred by Title VII, it appears the only allegation

of such a violation is his claim that he was denied procedural due process during the administrative hearing related to his termination.  *See* Amended Complaint (Doc. #5) at ¶¶ 48-59.  There are at least two issues, however, affecting the viability of such a claim in this case: cognizable defendants and *res judicata*.

### 1.    Proper parties to § 1983 claim.

Plaintiff does not specify against whom he brings his putative § 1983 due process claim.  Some of Plaintiff's allegations refer to certain acts or omissions by Defendants Norton and Williams through which, the Court presumes, Plaintiff intends to illustrate those Defendants' complicity in the violation of his procedural due process rights.  *See* Amended Complaint (Doc. #5) at ¶ 53 ("On the day of the hearing officers denied the plaintiff due process of law in not allowing the plaintiff to subpoena his witnesses as to the MCBOE members, whom voted to terminate the plaintiff's contract for personal and political reasons."); *id.* at ¶ 55 ("Attorney Charles Norton never submitted supportive documents or a witness list for the plaintiff.  While the hearing was in process, the plaintiff was unable to subpoena any of the MCBOE members or obtain his files from AEA for the hearing.").[8] Plaintiff's claim that Williams and Norton may be found liable for their actions under § 1983

---

[8]       Plaintiff also appears to allege that a non-party to this suit, "AEA representative Joe Reed, was instrumental in influencing the MCBOE Board and the hearing officers decision, the plaintiff presented evidence that Mr. Reed was acting at the request of Jimmy Barker, a Omega fraternity member to assist him in denying the plaintiff's procedurals due process rights to terminate the plaintiff's contract."  Amended Complaint (Doc. #5) at ¶ 57.  Because this allegation appears to allege a violation of Plaintiff's due process rights by a non-party, does not explain any action taken by Defendant Barker, and is unduly vague and speculative, the Court finds this allegation insufficient to state a claim.

is unavailing.

Williams, as the independent hearing officer appointed by the State Board of Education to preside over Plaintiff's termination hearing, is shielded by judicial immunity from Plaintiff's suit. "Judges are entitled to absolute judicial immunity from damages under section 1983 for those acts taken while they are acting in their judicial capacity unless they acted in the clear absence of all jurisdiction. A judge does not act in the clear absence of all jurisdiction when he acts erroneously, maliciously, or in excess of his authority, but instead, only when he acts without subject-matter jurisdiction." *Drees v. Ferguson*, 396 F. App'x 656, 659 (11th Cir. 2010) (quotations and internal citations omitted). Courts have recognized that judicial immunity extends to "hearing officers," like Williams, whom are appointed under state statutes to preside over administrative hearings concerned with the termination of certain employees. *See, e.g., Dixon v. Clem*, 492 F.3d 665, 674-75 (6th Cir. 2007). Plaintiff makes no allegation that Williams acted outside of his judicial capacity or outside the reach of his jurisdiction as hearing officer. Rather, Plaintiff simply complains that Williams "over the plaintiff objections continued with the hearing without the plaintiff having legal representation" and did not allow Plaintiff to "subpoena his witnesses as to the MCBOE members." Amended Complaint (Doc. #5) at ¶¶ 51, 53. Accordingly, Williams is shielded from liability under § 1983.

Defendant Norton also is not a proper party to Plaintiff's § 1983 claims. "Section 1983 claims can only be asserted against state actors." *Peterson v. Ramirez*, 2011 WL

2161911 at *1 (11th Cir. June 2, 2011).  Defendant Norton, an attorney representing the AEA, is not a state actor.  While "[a] private individual acts under color of state law for purposes of § 1983 when he conspires with state actors to violate the plaintiff's constitutional rights," *Gottschalk*, 2011 WL 2420020 at *6, Plaintiff has not sufficiently and plausibly alleged any fact suggesting that Norton so conspired with any purported state actor.  Rather, Plaintiff's allegations appear to be that Norton declined to represent Plaintiff at his termination hearing and "never submitted supportive documents or a witness list for the plaintiff."  Amended Complaint (Doc. #5) at ¶¶ 48, 55.  Thus, Defendant Norton is not a proper defendant to Plaintiff's procedural due process claim.

Because Plaintiff's allegations concerning his due process claim are too vague, conclusory, and unsupported by sufficient detail to even discern against whom - other than Norton and Williams - he may be asserting the claim, the Court finds that Plaintiff has failed to state a claim upon which relief may be granted under § 1983 as to the remaining individual defendants.

### 2. Preclusion

Construing Plaintiff's Amended Complaint as liberally as possible, one might conclude Plaintiff also intends to assert his § 1983 procedural due process claim against the Montgomery County Board of Education.  In that event, the Board Defendants contend that he has failed to state a claim upon which relief may be granted because this claim was considered and rejected by the appellate courts of the State of Alabama and is therefore

barred by *res judicata* in this proceeding.[9]  Bd. Def.'s Mot. (Doc. #27) at 8-9.  The Board

Defendants attach to their motion the decision of the Alabama Court of Civil Appeals,

Plaintiff's petition for writ of certiorari to the Alabama Supreme Court, and the Alabama

Supreme Court's decision declining to grant certiorari review.  For his own part, Plaintiff

attached to his Amended Complaint his "Notice of Appeal" of the hearing officer's decision

to the Alabama Court of Civil Appeals, *see* Letter, Attach. 2 to Amended Complaint (Doc.

#5-2) at 8, and a letter from the Alabama Court of Civil Appeals instructing him to file a

brief "setting forth 'special and important reasons' as required by Section 16-24-10(b), Ala.

Code 1975, for this Court to grant [his] appeal" of the hearing officer's determination, *see*

*id.*  Plaintiff's petition for writ of certiorari in the Alabama Supreme Court makes clear that

among the "special reasons" he articulated in support of his appeal of the hearing officer's

decision was his claim that "he was denied Due Process of law under the 14th Amendment

to the U.S. Constitution."  *See* Petition for Writ of Certiorari, Exh. 2 to Board Defendant's

Motion to Dismiss (Doc. #27-1).

> *Res judicata* is an affirmative defense and,
>
> [g]enerally, the existence of an affirmative defense will not support a motion
> to dismiss.  Nevertheless, a complaint may be dismissed under Rule 12(b)(6)

---

[9]      Alabama courts have established that the Alabama Teacher Tenure Act
creates a property interest which is entitled to constitutional due process protection;
accordingly, the state courts review appeals of hearing officer decisions upholding such
terminations to determine whether the procedure afforded comports with the minimums
of constitutional due process.  *See, e.g., Board of School Com'rs of Mobile County v.
Glenn*, __ So.3d__, 2010 WL 1739987 at *2-4 (Ala. Civ. App. Apr. 30, 2010).

> when its own allegations indicate the existence of an affirmative defense, so long as the defense clearly appears on the face of the complaint. When determining a motion to dismiss, a court may consider the complaint, its attachments, and documents attached to the defendant's motion to dismiss if the attached documents are central to the plaintiff's claims and referred to by the plaintiff without converting the motion to a motion for summary judgment.

*Brown v. One Beacon Insurance Company Inc.*, 317 F. App'x 915, 916-17 (11th Cir. 2009) (internal quotations and citations omitted). In addition, "[a] district court may take judicial notice of certain facts without converting a motion to dismiss into a motion for summary judgment." *Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010). Facts about which a court may take judicial notice include documents from prior court proceedings because such documents are "public records that [are] 'not subject to reasonable dispute' because they were 'capable of accurate and ready determination by resort to sources whose accuracy could not reasonably be questioned.'" *Id.* (quoting Fed. R. Evid. 201(b)). In this case, Plaintiff's Amended Complaint alludes to and provides exhibits evidencing his state court appeals of the administrative hearing related to his termination by the Board. Given the above authorities, the Court concludes that it may consider the Board's claim that Plaintiff's § 1983 due process claim is barred by *res judicata* without converting the motion to dismiss to a motion for summary judgment.

The question next becomes whether *res judicata* is applicable in this case. "Under the Full Faith and Credit Act, 28 U.S.C. § 1738, a federal court must give preclusive effect to a state court judgment to the same extent as would courts of the state in which the judgment was entered.'" *Brown v. R. J. Reynolds Tobacco Co.*, 611 F.3d 1324, 1331 (11th Cir. 2010)

(quoting *Kahn v. Smith Barney Shearson Inc.*, 115 F.3d 930, 933 (11th Cir.1997)). Thus, "[t]he doctrine of res judicata in conjunction with . . . the Full Faith and Credit Act, bars relitigation of matters that were previously litigated in a prior state suit." *Brown*, 317 F. App'x at 917. To determine whether *res judicata* bars federal "relitigation" of matters previously litigated in a state court, the federal court applies the preclusion principles of the respective state court. *Id.*; *R.J. Reynolds Tobacco Co.*, 611 F.3d at 1331 (citing *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985)).

In Alabama, "[t]he elements of *res judicata,* or claim preclusion, are (1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial identity of the parties, and (4) with the same cause of action presented in both suits." *Dairyland Ins. Co. v. Jackson*, 566 So. 2d 723, 725 (Ala. 1990). "If these elements are present, then the former judgment is an absolute bar to any subsequent suit on the same cause of action, including any issue which was or could have been litigated in the prior action." *Wheeler v. First Alabama Bank of Birmingham*, 364 So. 2d 1190, 1199 (Ala. 1978). Upon review of the relevant state court documents affixed to both Plaintiff's and Defendant's pleadings, there is no question in this instance that the first three elements of the test are met. As to the fourth element, whether the "cause of action" is the same in the two suits, Alabama law turns on whether "the issues in the two actions are the same and whether the same evidence would support a recovery for the plaintiff in both suits. *Dominex, Inc. v. Key*, 456 So. 2d 1047, 1054 (Ala. 1984). Stated differently, the fourth element is met when the issues

involved in the earlier suit comprehended all that is involved in the issues of the later suit." *Jackson*, 566 So. 2d at 726.  *See also Old Republic Ins. Co. v. Lanier*, 790 So. 2d 922, 928 (Ala. 2000) (finding "the principal test for comparing causes of action is whether the primary right and duty or wrong are the same in each action.  Res judicata applies not only to the exact legal theories advanced in the prior case, but to all legal theories and claims arising out of the same nucleus of operative facts.").

Plaintiff's due process claims before the appellate courts of Alabama--that "the hearing officers [sic] decision is arbitrary and capricious" and that he was "denied basic procedures due process of law" due to his purportedly being "denied adequate time and access to subpoenas to his witness and to seek adequate legal representation," *see* Petition for Writ of Certiorari, Exh. 2 to Bd. Def.'s Mot. To Dismiss (Doc. #27-1)--are substantially identical to the instant § 1983 claim that Plaintiff was denied procedural due process during the administrative hearing, *see* Amended Complaint (Doc. #5) at ¶ 50-53.  Hence, the claims arise "out of the same nucleus of operative facts" and any "evidence" of the denial of Plaintiff's due process rights would support his claim for relief in the Alabama courts and in the instant federal action.  Accordingly, because Plaintiff's due process claims against the Board before the state courts and this Court are essentially identical, and because those claims were rejected on the merits by the state courts, he is precluded from relitigating those claims in this Court.[10]

---

[10]     Given that the prior state court matter involved an appeal of an administrative determination and the instant matter is predicated on a scatter-shot complaint purporting to allege

E.      **Miscellaneous motions filed by Plaintiff.**

On May 24, 2011, and June 3, 2011, Plaintiff filed several additional motions in this

case.  These motions include "Plaintiff's Petition for Emergency Preliminary Injunction"

(Doc. #44), "Plaintiff's Motion for Leave to Add Defendant Joseph Morton" (Doc. #45),

"Plaintiff's Motion for Leave to File his Second Amended Complaint" (Doc. #46), and

"Plaintiff's Motion for Protective Order" (Doc. #48).[11]  The common thread uniting all of

these motions appears to be Plaintiff's concern with purported efforts by the Alabama

Department of Education to revoke his teacher's certification.  Each motion, in some fashion,

is Plaintiff's response to some aspect of the administrative action.  The Court will address

---

several vague federal claims, one may argue that the "causes of action" underlying the state and
federal actions are not the same.  However, even if *res judicata*, synonymous in this instance
with claim preclusion, were not applicable in this case because Plaintiff's "cause of action" in the
state courts and this Court were somehow considered different, Plaintiff's instant due process
claim would still be barred by collateral estoppel, or issue preclusion.  "'Collateral estoppel
operates where the subsequent suit between the same parties is not on the same cause of action.'
Collateral estoppel requires that: (1) the issue be identical to one [sic] the issue involved in a
previous suit; (2) the issue be actually litigated in prior action; and (3) the resolution of the issue
be necessary to the prior judgment."  *Brown*, 317 F. App'x at 917 (internal citations omitted)
(quoting *Wheeler v. First Alabama Bank of Birmingham*, 364 So.2d1190, 1199 (Ala. 1978)).
There is no dispute that Plaintiff raised his due process claim in his appeal of the hearing
officer's decision.  It is also clear that the Alabama courts review due process claims in their
statutory review of such administrative proceedings.  Thus, because this issue has been litigated
and the resolution of this issue was necessary to the prior state proceedings, Plaintiff is
collaterally estopped from relitigating the issue in this suit.  *See id.* at 918 (applying collateral
estoppel to preclude suit as alternative bar to *res judicata*).

[11]      Plaintiff also filed a "Notice of Removal" (Doc. #47) which purports to remove
what appears to be a proposed administrative action involving Defendant and the Alabama
Department of Education.  While the Court is not satisfied that such an action may even be
removed to federal court, the Department has nevertheless filed a Motion to Remand (Doc. #50).
The Court has entered an Order (Doc. #51) instructing Plaintiff to respond to the Motion to
Remand by July 19, 2011.

these motions below.

### 1.    Motion for Emergency Preliminary Injunction

Plaintiff's first motion seeks an injunction against "the Defendants Montgomery County Board of Education and the [sic] Joseph B. Morton, The State Superintendent of Education for Alabama" to "prevent the defendants from taking any adverse action while this litigation is pending . . . ."  Motion (Doc. #44) at 1, 2.  Plaintiff claims that the proposed hearing concerning the revocation of his teaching license will require him to "litigate the same issues before the court now," that he is "dependant [sic] upon his Professional Teaching Certification to seek future employment and without it he has no livelihood," and that he will suffer irreparable harm if the proposed hearing is allowed.  *Id.*

A party seeking a temporary restraining order must "demonstrate the following in order for the District Court to grant its motion for a preliminary injunction: '(1) a substantial likelihood of success on the merits of the underlying case, (2) the movant will suffer irreparable harm in the absence of an injunction, (3) the harm suffered by the movant in the absence of an injunction would exceed the harm suffered by the opposing party if the injunction issued, and (4) an injunction would not disserve the public interest.'" *Grizzle v. Kemp*, 634 F.3d 1314, 1320 (11th Cir. 2011) (quoting *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1217 (11th Cir.2008)).

Plaintiff's request for a preliminary injunction fails because, whatever the merits of his dubious claim that he will be irreparably harmed, he has not shown that he has a

substantial likelihood of success on the merits of his underlying case.  Plaintiff's motion makes no showing, much less a substantial showing, that he is likely to succeed on the merits of his claims.  Moreover, as reflected by the prior portions of this Recommendation, even construing the Amended Complaint at the outer bounds of liberality, Plaintiff has only very tenuously articulated a Title VII claim of discrimination and retaliation deserving of further proceedings.  Plaintiff's pleadings consist mostly of conclusory allegations of conspiracies and personal vendettas involving numerous defendants.  While he arguably has cleared the hurdle of simply stating a claim as to his Title VII allegations, he has not demonstrated a likelihood of success on the merits of such claims in either his motion for injunction or other pleadings filed thus far in this case.  Moreover, the Court finds that enjoining Alabama's lawful regulation of its teachers is not in the public interest.  Plaintiff states in his motion that the State Superintendent of Education, Joseph B. Morton, is seeking to revoke his teaching certificate pursuant to Ala. Code § 16-23-5.  This provision of Alabama law empowers the State Superintendent to "revoke any certificate issued under this chapter when the holder has been guilty of immoral conduct or unbecoming or indecent behavior."  § 16-23-5(a). Alabama unquestionably has a very significant interest in the ability to regulate its public school teachers without undue restraint by the federal government.  Given Plaintiff's failure to demonstrate a likelihood of success on the merits and the strong interest at stake for the public, the Court finds that the requested injunction would disserve the public interest. Accordingly, "Plaintiff's Petition for Emergency Preliminary Injunction" (Doc. #44) is due

to be denied.

      **2.**     **Plaintiff's Motions for Leave to Add Defendant Joseph Morton and to file a Second Amended Complaint.**

      Plaintiff has filed a "Motion for Leave to Add Defendant Joseph Morton" (Doc. #45). Plaintiff wishes to add Supt. Morton because "he is currently instituting proceeding to revoke the plaintiff's Alabama Teaching Certification." Motion (Doc. #45) at 1. Plaintiff predicates his motion on Fed. R. Civ. P. 17(a), which addresses who may bring an action on behalf of the real party in interest. Rule 17(a) provides no authority for the relief Defendant appears to request, i.e., simply adding another named defendant to those being sued by Plaintiff. Moreover, Plaintiff's Amended Complaint includes no allegations or statements of a claim as to Supt. Morton. Accordingly, to the extent Plaintiff merely seeks to add Supt. Morton as a defendant in this action under Rule 17(a), and in the absence of any properly stated allegations against Supt. Morton, such motion is due to be denied.

      Of course, Plaintiff's "Motion for Leave to File his Second Amended Complaint" (Doc. #46) is the more proper, even if not legally supported, mechanism for "adding" Supt. Morton and stating claims against him. Indeed, the proposed Second Amended Complaint, attached to the motion to amend, lists Supt. Morton as a defendant and includes some vague allegations of conspiracy and due process deprivations on the part of Supt. Morton. *See* Proposed Second Amended Complaint, ach. 1 to Motion (Doc. #46-1) at ¶¶ 111-114, 117-121.

      Pursuant to Fed. R. Civ. P. 15(a)(2), when the time for amendment as a matter of

course has passed, as it has here, "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  As no party has consented to the request for leave to amend, Plaintiff must obtain leave of the Court and must demonstrate that justice requires extension of such leave in this instance.  "Ordinarily, '[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief,' *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962), leave to amend 'should be freely given,' Fed.R.Civ.P. 15(a).  Under *Foman,* however, a district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile. *Foman*, 371 U.S. at 182, 83 S.Ct. at 230.  'This court has found that denial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal.'  *Burger King Corp. v. Weaver,* 169 F.3d 1310, 1320 (11th Cir.1999) (citation omitted)." *Hall v. United Ins. Co. Of America*, 367 F.3d 1255, 1262-63 (11th Cir. 2004).

In his motion to amend, Plaintiff states "[i]n the interest of justice the plaintiff hereby submits this motion for leave to file his amended complaint to Conform to the Evidence Presented under Federal Rule of Civil Procedural Rule 15."  Motion (Doc. #46) at 1.  This constitutes the entirety of Plaintiff's argument in favor of his request for leave to amend.  Upon review of the proposed Second Amended Complaint, the undersigned finds that Plaintiff's request for leave to amend is due to be denied because the requested amendments are futile.

Plaintiff's proposed Second Amended Complaint largely tracks the Amended Complaint through the first three counts. Although Plaintiff appears to add additional allegations to the § 1985 claim alleged in Count Three, these allegations do not materially affect the analysis of this claim as set forth above.[12]  Plaintiff also adds additional counts to the proposed Second Amended Complaint. Count Four confusingly discusses federal law protecting the rights of persons to hold, lease, sell, and convey real and personal property, 42 U.S.C. § 1982, and then mostly restates some of the allegations of Plaintiff's § 1985 claim in Count Three. As there is no allegation in the proposed Second Amended Complaint supporting any claim that Plaintiff's rights under § 1982 have been violated by Defendants, and the remainder of the claim appears to be a reiteration of the § 1985 claim in Count Three of the Amended Complaint, Plaintiff's proposed amendment to add Count Four is futile and due to be denied.

Finally, Plaintiff also seeks to add a fifth count in the proposed Second Amended

---

[12]     Although the proposed Second Amended Complaint does include the allegation that "Defendants Don Williams and Charles Norton are both white males and I am a black male of African American descent, a person protected under title 42 U.S.C. 1985, I have been discriminated against and suffered discrimination based upon my race[,]" *see* Proposed Second Amended Complaint (Doc. #46-1) at ¶ 91, such conclusory allegation is insufficient given the overall lack of relevant allegations detailing the manner and means of any such conspiracy, or any actions taken by Defendants to further the conspiracy. Plaintiff's reliance on the formulaic recitation of some of the elements of § 1985 is simply insufficient to state a claim. *Jacobs v. Tempur-Pedic Intern., Inc.,* 626 F.3d 1327, 1332-33 (11th Cir. 2010). Likewise, to the extent Plaintiff actually alleges a discrete act presumably in furtherance of the alleged conspiracy-in this case, his allegation that Defendants denied him access to witnesses at his hearing-Plaintiff has failed to show that such a deprivation amounts to a violation of equal protection or the privileges and immunities enjoyed by others under the law.

Complaint.  This count first presents a mish-mash discussion of various federal laws, including sections 1982, 1983, 1985, and Title IX.  Proposed Second Amended Complaint (Doc. #46-1) at ¶ 109.  Plaintiff then presents several allegations about the Superintendent's actions in seeking to revoke his teaching certificate.  *Id.* at ¶¶ 111-124.  Plaintiff concludes that all of these actions render Supt. Morton liable under "20 U.S.C. 1681, 42 U.S.C. 1982, 1983, 1985 and Title VII of the 1964 Civil Rights Act."  *Id.* at ¶ 118.  While the legal theories underlying the allegations of Count Five strike the Court at first blush as patently frivolous, it is apparent that, on their face, the allegations of Count Five, even taken as true, fail to state a claim.  Plaintiff alleges that the Superintendent has "proposed" revoking his teacher's certification and that he has been alerted to the Superintendent's desire to hold a hearing on the proposed revocation.  *Id.* at ¶¶ 111-112.[13]  Essentially, therefore, Plaintiff is complaining about a deprivation, revocation of his teacher's certification, which has not yet occurred and about a purportedly insufficient process which has hardly even begun, much less come to completion.  Thus, even assuming that Plaintiff could state some cognizable federal claim under the very attenuated legal authorities he cites concerning the revocation of his teacher's certificate, such action would be unripe at this time.  *See, e.g., Lord Abbet Mun. Income Fund, Inc. v. Tyson*, 2011 WL 197959 at *6-9 (M.D. Ala. Jan. 20, 2011) (Watkins, J.).  For all of the foregoing reasons, Plaintiff's Motion for Leave to File his

---

[13]     Indeed, the Alabama Department of Education's Motion to Remand (Doc. #50) confirms Plaintiff's account that any actions against him have been proposed and that the Department seeks to provide a hearing on the matter.

Second Amended Complaint (Doc. #46) is due to be denied.

### 3.    Plaintiff's Motion for Protective Order

Plaintiff has also filed a motion styled "Plaintiff's Motion for Protective Order" (Doc. #48). Plaintiff's motion reads as follows: "COMES NOW the plaintiff Jessie Tompkins and request that a **Protective Order** be issued with regard to various students listed in the **PLAINTIFF'S SUPPLEMENTAL RESPONSE TO DEFENDANT' CHARLES NORTON MOTION TO DISMISS**. Moreover, the records presented were released on June 9th 2009 and December 2nd 2010, by the Montgomery County Board of Education in a Public Hearing to terminate the plaintiff's contract." Motion (Doc. #48) at 1 (emphasis in original). The "records" referred to in Plaintiff's motion appear to be sets of exhibits Plaintiff attached to the "Supplemental Response" to which he alludes in the motion. Upon review, these "records" consist almost entirely of grievances filed by Plaintiff and correspondence between Plaintiff and others concerning his grievances and other perceived problems. Several items of correspondence contain the names of students which, for the most part, have been redacted to reveal only the students' initials. Plaintiff predicates his request for a "protective order" on a number of allegations listed in the motion, including that the Montgomery Police Department previously released a number of the students' names, that the media "disseminated" such information to the public, that there is a question whether these "records" are entitled to confidentiality, and that the Board "has refused to name or identify any students whom these records have been made as official educational records for

any student." Motion (Doc. #48) at 1. Thus, Plaintiff requests that the Court "determine whether the records not presented under FERPA, does not violate the Family Educational Rights and Privacy Act of 1974 (FERPA)." *Id.* at 2.

Plaintiff appears to misunderstand the purpose and function of a "protective order" within the meaning of the Federal Rules of Civil Procedure. Rule 26(c) governs requests for protective orders during the civil discovery process. The rule requires that, upon a showing of "good cause," a Court may issue such order as is necessary to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" by imposing any of several different requirements on the parties in the conduct of discovery. Fed. R. Civ. P. 26(c)(1). Of course, in this case there is no need for a protective order governing the conduct of discovery because, thus far, discovery has not commenced. Even if discovery is soon commenced as to the limited claims which may survive the various motions to dismiss, there has been no particularized showing by Plaintiff of a need for a protective order under Rule 26(c). Nor has Plaintiff provided the Court with the requisite certification that Plaintiff has conferred in good faith with opposing parties in seeking the protective order. Thus, to the extent Plaintiff seeks a "protective order" within the meaning of the Federal Rules, his motion is due to be denied.

What Plaintiff's motion appears to actually seek is a ruling by this Court about whether the various documents he has attached to a certain pleading constitute "education records" entitled to the protections of the Family Educational Rights and Privacy Act of 1974

(FERPA), 20 U.S.C. § 1232g.  However, the Court may only make this determination to the extent necessary to resolve a justiciable controversy properly before the Court.   The Court is not presently in a posture whereby the Court must resolve the question posed by Plaintiff's motion, and to do so merely at his request would be tantamount to rendering an advisory opinion, a practice outside the scope of the Court's limited jurisdiction.  *See Friends of the Everglades v. South Florida Water Management Dist.*, 570 F.3d 1210, 1216 (11th Cir. 2009). It is the undersigned's very tenuous belief that, as stated in this Recommendation, Plaintiff's case is deserving of further proceedings on the limited issue of his Title VII claims against the Board.  Although it is difficult to conceive of this issue becoming ripe for determination, to the extent it may become necessary to resolve the question posed by Plaintiff's motion, the Court can render its judgment on that issue at the appropriate time.  However, given the present posture of this case, it is not integral to the resolution of any controversy before the Court and is unnecessary.  Accordingly, to the extent Plaintiff's Motion for Protective Order actually seeks a judgment about whether certain records are subject to FERPA, his motion is due to be denied at this time.

## III.   CONCLUSION

For all of the foregoing reasons, the undersigned Magistrate Judge RECOMMENDS as follows:

a.      that the Board Defendants' Motion to Dismiss (Doc. #27) be GRANTED in PART and DENIED in PART, Defendant Williams' Motion to Dismiss (Doc.

34

#31) be GRANTED, and Defendant Norton's Motion to Dismiss (Doc. #40) be GRANTED, as follows:

1.     that Plaintiff's claims pursuant to Title VII of the Civil Rights Act of 1964 be DISMISSED as to all Defendants except for the Montgomery County Board of Education;

2.     that Plaintiff's claims pursuant to Title IX and 42 U.S.C. §§ 1983 & 1985 be DISMISSED as to all Defendants;

3.     that all Defendants, excluding the Montgomery County Board of Education, be DISMISSED as parties to this action;

b.     that "Plaintiff's Petition for Emergency Preliminary Injunction" (Doc. #44) be DENIED;

c.     that "Plaintiff's Motion for Leave to Add Defendant Joseph Morton" (Doc. #45) be DENIED;

d.     that "Plaintiff's Motion for Leave to File his Second Amended Complaint" (Doc. #46) be DENIED;

e.     that "Plaintiff's Motion for Protective Order" (Doc. #48) be DENIED; and

f.     that this matter be referred back to the undersigned Magistrate Judge for further appropriate proceedings.

It is further

ORDERED that the parties are DIRECTED to file any objections to this

Recommendation by **August 9, 2011**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which Plaintiff objects.  Frivolous, conclusive or general objections will not be considered by the District Court.  Plaintiff is advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

DONE this 26th day of July, 2011.


/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE