IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JESSIE TOMPKINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:10cv1015-MEF |
| | ) | |
| THE MONTGOMERY COUNTY | ) | |
| BOARD OF EDUCATION, | ) | |
| | ) | |
| Defendant. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Before the court is Defendant's Motion for Summary Judgment (Doc. 122) and Plaintiff's Response in Opposition (Doc. 126).  On December 3, 2010, the District Judge referred this case to the undersigned Magistrate Judge "for all pretrial proceedings and entry of any orders or recommendations as may be appropriate."  Order (Doc. 3).

Plaintiff, proceeding *pro se*, filed his original Complaint on November 30, 2010 and raised claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.*; Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 *et seq.*; and 42 U.S.C. §§ 1983 and 1985.  The Complaint named as defendants:  the Montgomery County Board of Education, the Board members, and certain named employees of the Board; Don E. Williams, the "Hearing Officer" who presided over Plaintiff's administrative challenge to his termination; and Charles Norton, a union attorney from the Alabama Education

Association, who initially served as Plaintiff's attorney in the hearing challenging his termination.  All of the named defendants filed motions to dismiss.  On August 15, 2011, the District Judge entered an Order (Doc. 60) adopting the undersigned's Recommendation and dismissing Plaintiff's Title IX, and 42 U.S.C. §§ 1983 and 1985 claims as to all defendants and dismissing all defendants, with the exception of the Montgomery County Board of Education, as parties to this action.  Accordingly, the only remaining claim is Plaintiff's Title VII claim against the Montgomery County Board of Education.  On October 19, 2012, the sole remaining defendant, the Montgomery County Board of Education ("Defendant"), filed a Motion for Summary Judgment (Doc. 122).

After a review of Defendant's Motion for Summary Judgment (Doc. 122), Plaintiff's Opposition (Doc. 126) and supporting briefs, and for the reasons that follow, the undersigned RECOMMENDS that Defendant's Motion for Summary Judgment (Doc. 122) be GRANTED.

## I.     STATEMENT OF FACTS

The court has carefully considered the pleadings in this case and all documents submitted in support of, and in opposition to, Defendants' Motion for Summary Judgment. The submissions of the parties, viewed in the light most favorable to the non-moving party, establish the following relevant facts:

Plaintiff is an African American male.  Plaintiff began his employment with the Montgomery County Board of Education on or around October 26, 1998, as a physical education teacher/coach and was assigned to the Montgomery County Youth Facility.

2

In April 2006, Plaintiff was detained at the Montgomery Youth Facility by a bailiff and sheriff regarding a personal matter.  On April 12, 2006, Plaintiff was placed on paid administrative leave until April 17, 2006 (three days) while the matter was investigated.

Plaintiff requested and on December 8 2006, received a transfer from his position as a Science and Physical Education Teacher at the Montgomery Youth Facility to a new position as a Physical Education Teacher at FEWS Secondary Alternative School ("FEWS"). The transfer was effective January 2, 2007.  FEWS is an alternative school facility for students with disciplinary problems.  Lorenzo Pharrams ("Pharrams") was the principal of FEWS and served as Plaintiff's direct supervisor.

Sometime after beginning his term of employment at FEWS, a female student accused Plaintiff of sexual harassment or inappropriate conduct.  Plaintiff was placed on paid administrative leave pending an investigation of the charges against him.  Pharrams conducted an investigation and concluded Plaintiff was not guilty of the accusations.  On October 27, 2008, Plaintiff sent an email to Pharrams stating that the female student who had made the accusations against him had been reassigned to his class.

In or around November 2008, Plaintiff videotaped students misbehaving in his classroom.

On or about December 10, 2008, Plaintiff filed a grievance with Pharrams.  Plaintiff's grievance included allegations concerning "personnel files," "unfair change in working conditions and student suspension," "unfair working conditions," and "Student arrest and discipline records."  Essentially, Plaintiff alleged that the Board:  1) denied him access to his

3

personnel records, including development plans and evaluations, and released confidential information from his personnel file, specifically his social security number and date of birth; 2) allowed disruptive students to return to his classroom; 3) arbitrarily assigned him too many students; and 4) removed reports of errant students from student files.

On January 5, 2009, Plaintiff filed a notice of appeal relating to his December 10, 2008 employee grievance, as amended on December 19, 2008, stating that his immediate supervisor, Pharrams, was nonresponsive.

On January 12, 2009, Pharrams responded in writing to each of the four items listed on Plaintiff's grievance (level I grievance response).  In his response, Pharrams warned Plaintiff to stop videotaping his students, stating "There are board and school approved policies that are currently in place as it relates to documentation of student behavior but video taping your under aged students is not one of them."  Def.'s Ex. D (Doc. 123-4) at 2. Plaintiff was placed on administrative leave with pay, beginning January 13, 2009, pending an investigation of his grievance.

On January 14, 2009, Plaintiff appealed Pharrams's response to his grievance.  On January 16, 2009, Jimmy Barker ("Barker"), Assistant Superintendent, Office of Human Resources, responded to Plaintiff's grievance in a follow-up letter.  Barker's letter reminded Plaintiff to "cease and desist in the video taping of [his] classroom until such time that a legal opinion regarding possible FERPA violations can be ascertained by this office."  Def.'s Ex. E (Doc. 123-5) at 3.  Also on January 16, 2009, Barker responded in writing to Plaintiff's grievance (level II grievance response).

4

On or around January 16, 2009, radio station personality Kevin Elkins informed Thomas E. Salter ("Salter"), senior communications officer with Montgomery Public Schools, that Plaintiff had given Elkins a videotape of students misbehaving in Plaintiff's class.  Salter is in charge of media and public relations.  On or about January 21, 2009, Kristina Littlefield, a reporter for WAKA news channel, informed Salter that she also had received a video of students misbehaving in class from Plaintiff.

On January 23, 2009, Plaintiff appealed Barker's response.

On February 11, 2009, John Dilworth ("Dilworth"), Superintendent, Montgomery Public Schools, responded in writing to Plaintiff's grievance (level III grievance response).  On February 19, 2009, Plaintiff submitted a letter to Beverly Ross ("Ross"), Chair of the Montgomery County Board of Education, appealing the February 11, 2009 response he received from Dilworth.

On April 14, 2009, the Board held a hearing on Plaintiff's grievance.  On April 20, 2009, Ross responded in writing to Plaintiff's February 11, 2009 appeal.  Ross stated that the Board had voted to uphold the superintendent's resolution of Plaintiff's grievance.  Ross further stated that Plaintiff could not be removed from administrative leave because an investigation regarding Plaintiff's possible FERPA violation was pending.

On May 11, 2009, Clay Slagle ("Slagle"), Interim Superintendent, notified Plaintiff, in writing, that he "intend[ed] to recommend the cancellation of [Plaintiff's] employment."  Def.'s Ex. B, Doc. 123-2 at 2; Pl.'s Ex. C, Doc. 127-3 at 1.[1]  Slagle stated the reason for his

---

[1] Slagle replaced Dilworth as superintendent.

recommendation was "[o]her good and just cause specifically [Plaintiff's acts in] releasing the names and images of students in [his] class to media outlets without approval and/or consent." *Id*. Slagle further notified Plaintiff that he had the right to a conference with the Board regarding Slagle's recommendation. On May 26, 2009, Plaintiff wrote a letter to Slagle objecting to his recommendation.

On June 9, 2009, the Board held a conference on Slagle's recommendation that Plaintiff's employment be terminated. On June 15, 2009, Slagle notified Plaintiff that the Board had upheld his recommendation.

Plaintiff challenged his termination pursuant to the Alabama Teacher Tenure Act. On June 25, 2009, Charles Norton ("Norton"), Staff Attorney for the Alabama Education Association (the Union), and acting on Plaintiff's behalf, notified Defendant that Plaintiff was contesting his termination. An appeal hearing was held on December 2 and 3, 2009. On December 2, 2009, Norton withdrew as Plaintiff's attorney because Plaintiff accused him of acting in conspiracy with the Board. Plaintiff represented himself in the hearing. Barker, Pharrams, Salter, and Elkins testified at the hearing. Elkins testified that he "looked at a videotape on [Plaintiff's] computer." Def.'s Ex. N, Doc. 123-14 at 3. The videotape depicted students misbehaving in plaintiff's classroom. Littlefield supplied an affidavit stating that Plaintiff had given her a videotape depicting students misbehaving in his class. Following the hearing, the hearing examiner, Don E. Williams ("Williams"), issued an opinion upholding the Board's decision to terminate Plaintiff. Williams determined that "The evidence is sufficient to support a finding that Tompkins violated the Board's policy

to adhere to FERPA, which the Board had adopted as the Board's policy for prohibiting teachers, or any employee from releasing the information."[2]  Decision by Don E. Williams, Def.'s Ex. K (Doc. 123-11) at 27.  Accordingly, Williams concluded that "[t]he [FERPA] violation by Tompkins was extremely serious and supports the Board's decision to terminate his employment contract" and, thus, "[t]he Board had sufficient grounds to cancel the employment contract of Tompkins."  *Id.* at 29.

On October 13, 2009, Plaintiff filed a second complaint with the United States Department of Education.[3]

On November 19, 2009, Plaintiff filed a Charge of Discrimination against the Board with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on race, sex, and retaliation.  Plaintiff's Charge stated that the alleged discrimination began on January 12, 2009 (the day he was placed on administrative leave) until November 15, 2009.

---

[2] Williams determined that "Tompkins violated Board policy Student Records, E.2."  Decision by Don E. Williams, Def.'s Ex. K (Doc. 123-11) at 28.  Section E.2 of the Board's policy on student records states:

> E.   Disclosure to Other Individuals and Organizations
>      . . .
>
>      2. Information, except for such student directories furnished to other individuals and organizations, should be restricted to requests accompanied by an information or transcript release signed by the student, parent or guardian.

Def.'s Ex. R (Doc. 123-18) at 5.

[3] It is unclear when Plaintiff filed his first complaint with the United States Department of Education.

7

In or around April 2010, Plaintiff filed a third complaint with the United States Department of Education.

## II.    STANDARD OF REVIEW

Under Rule 56(a) of the Federal Rules of Civil Procedure, a reviewing court shall grant a motion for "summary judgment if the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).[4]  Only disputes about material facts will preclude the granting of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party.  An issue is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson*, 477 U.S. at 248).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion[,]" and alerting the court to portions of the record which support the motion.  *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986).

---

[4] On December 1, 2010, amendments to Rule 56 became effective.  The amendments to Rule 56 generally reorganize the provisions of the Rule and incorporate language which is "intended to improve the procedures for presenting and deciding summary judgment-motions and [is] . . . *not intended to change the summary-judgment standard or burdens.*" *Farmers Ins. Exch. v. RNK, Inc.*, 632 F.3d 777, 782 n.4 (1st Cir. 2011) (internal quotations omitted) (emphasis in original). Moreover, because the summary judgment standard remains the same, the amendments "will not affect continuing development of the decisional law construing and applying" the standard now articulated in Rule 56(a).  Fed. R. Civ. P. 56(a) advisory committee's note to 2010 amendments. Accordingly, while the court is bound to apply the new version of Rule 56, the undersigned will, where appropriate, continue to cite to decisional law construing and applying prior versions of the Rule.

However, once the movant has satisfied this burden, the non-movant is then similarly required to cite to portions of the record which show the existence of a material factual dispute. *Id.* at 324. In doing so, and to avoid summary judgment, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations[], admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B).

If the non-movant "fails to properly address another party's assertion of fact" as required by Rule 56(c), then the court may "consider the fact undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2) & (3).

In determining whether a genuine issue for trial exists, the court must view all the evidence in the light most favorable to the non-movant. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003). Likewise, the reviewing court must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson*, 477 U.S. at 255. After the non-moving party has responded to the motion for summary judgment,

the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a).

## III.   DISCUSSION

### A.     The Burden Shifting Analysis

While Plaintiff's Complaint is not a model of clarity, it appears to allege discrimination based on race, sex, and retaliation under Title VII.[5]  Plaintiff has not provided direct evidence that discrimination was the reason for any alleged adverse employment action nor has he proffered statistical evidence or evidence of a pattern of discrimination in this case.   Because Plaintiff's discrimination and retaliation claims rely on circumstantial evidence, the claims are analyzed under the burden-shifting framework described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973).

Under the *McDonnell Douglas* framework, Plaintiff must first create a presumption of discrimination by establishing a *prima facie* case. *McDonnell Douglas*, 411 U.S. at 802. If Plaintiff establishes a *prima facie* case, the burden shifts to the employer to produce a legitimate, non-discriminatory reason for its adverse employment action.   *Id.* at 802. Defendant's burden is "exceedingly light" and Defendant must merely proffer a non-discriminatory reason for the adverse employment action, not prove it. *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1019 (11th Cir. 1994) (quoting *Perryman v. Johnson Prods. Co.*,

---

[5] On November 19, 2009, Plaintiff filed an EEOC Charge of Discrimination against Defendant alleging discrimination based on race, sex, and retaliation.  Plaintiff's Charge stated that the alleged discrimination began on January 12, 2009 (the day he was placed on administrative leave) until November 15, 2009.

*Inc.*, 698 F.2d 1138, 1142 (11th Cir. 1983)).

If Defendant proffers a legitimate reason, Plaintiff must prove that Defendant's reason was in fact a pretext. *McDonnell Douglas*, 411 U.S. at 804; *Burdine,* 450 U.S. at 253-57. Under the Supreme Court's holding in *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993), in order to prove that Defendant's articulated reason is a pretext, Plaintiff must demonstrate not only that the reason is false, but also that intentional discrimination was the real reason. *Hicks*, 509 U.S. at 515 ("[A] reason cannot be proved to be 'a pretext for discrimination' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason.") (emphasis in original).  Despite the burden-shifting framework, the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine*, 450 U.S. at 253.

To survive a motion for summary judgment, a plaintiff must rebut every legitimate, non-discriminatory reason for the employment decision. *Crawford v. City of Fairburn*, Ga., 482 F.3d 1305, 1308 (11th Cir. 2007).

## B.    Race and Sex Discrimination Claim

Plaintiff alleges he was discriminated against based on his race and sex.  In support of his discrimination claim, Plaintiff appears to allege two adverse actions:  that he was removed from the list of teachers teaching homebound students and 2) he was terminated. Plaintiff may establish a *prima facie* case of race and sex discrimination through circumstantial evidence by proving that:  (1) he belongs to a protected class; (2) he was subjected to an adverse employment action; (3) his employer treated similarly situated

employees outside his classification more favorably or or he was replaced by an individual outside of his protected class; and (4) he was qualified to do the job. *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (citing *McDonnell Douglas*, 411 U.S. at 802; *Coutu v. Martin Cnty. Bd. of Cnty. Comm'rs*, 47 F.3d 1068, 1073 (11th Cir. 1995); *Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1060 (11th Cir. 1994)).

Defendant contends that Plaintiff cannot establish a *prima facie* case of discrimination, arguing "As for the sex and race claims, Tompkins cannot establish that he was replaced by a female and/or white individual nor can he present evidence that he was treated less favorably than comparators in similarly situated -- nearly identical -- circumstances." Def.'s Br. (Doc. 123) at 22.

Plaintiff seems to base his sex discrimination claim on the allegation that "his home bound students w[ere] assigned to Qwen Woods a female teacher on sick leave." Pl.'s Resp. (Doc. 127) at 2. Defendant addresses Plaintiff's allegation stating,

> To the extent Tompkins is claiming female teachers were treated more favorably than him with teaching homebound students while on leave, the claim[] fails. First, the homebound claim is time barred because it was not the subject of an EEOC claim within 180 days of Tompkins being removed from the homebound list. Second, Tompkins claims Woods was allowed to teach homebound students while on sick leave because she was related to Mr. Barker. It is strictly rumor that Woods was allowed to teach homebound students on leave. Actually, Woods tutored a student one day and Barker stopped that action. (Exhibit M p 5 response 10). Even then, Woods' situation is completely different than Tompkins (and therefore not relevant to demonstrate discrimination) because she was out on sick leave *not* leave to investigat[e] wrongdoing – sexual harassment claims by a student – like Tompkins. Moreover, if Woods was given special treatment because she is Barker's relative, such is not based on sex or race. It is special treatment and is not illegal. However, Tompkins cannot prove any of this. He is simply

12

> claiming it based on rumor and speculation which is not evidence sufficient to
> defeat summary judgment.

Def.'s Br. (Doc. 123) at 23-24.  The court agrees with Defendant.  Plaintiff presents no

evidence other than his assertions that he was discriminated against based on his sex.  As

Defendant points out, Woods is not similarly situated to Plaintiff because even if Woods was

allowed to teach homebound students while on leave, she was on sick leave while Plaintiff

was on leave pending an investigation of wrongdoing.  Thus, Plaintiff would not be able to

establish a *prima facie* case of sex discrimination on these facts.  *See Wilson v. B/E*

*Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004) ("The plaintiff and the employee she

identifies as a comparator must be similarly situated in all relevant respects.  The comparator

must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable

decision by the employer.") (internal quotation omitted).  Plaintiff fails to meet this burden

and, thus, he cannot establish a *prima facie* case of sex discrimination.

As to Plaintiff's termination, the court need not decide whether Plaintiff has

established a *prima facie* case of discrimination, because even assuming Plaintiff can

establish a *prima facie* case, Defendant has articulated a legitimate, non-discriminatory

reason for his termination that Plaintiff has failed to rebut.  Defendant contends that Plaintiff

was terminated because he violated FERPA.  Plaintiff has failed to show there is a genuine

issue of material fact that Defendant's articulated reason for Plaintiff's termination was a

pretext or is otherwise unworthy of credence.  *See Combs v. Plantation Patterns,*

*Meadowcraft, Inc.*, 106 F.3d 1519, 1538 (11th Cir. 1997) ("The district court must evaluate

whether the plaintiff has demonstrated 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'") (citation omitted). In meeting his burden, Plaintiff disputes that he committed a FERPA violation when he recorded students and released the video to members of the media. This assertion is insufficient for Plaintiff to carry his "ultimate burden of proving the reason to be a pretext for unlawful discrimination." *Denney v. City of Albany*, 247 F.3d 1172, 1183 (11th Cir. 2001). Regardless of the legal resolution to the question of whether or not Plaintiff violated FERPA, he has presented no evidence that Defendant did not "honestly believe[ ]" the facts as portrayed to it. *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1318 n.6 (11th Cir. 2003) (per curiam). Indeed, even if Plaintiff did not in fact violate FERPA, he cannot survive a motion for summary judgment without meeting his burden of rebutting Defendant's legitimate non-discriminatory reason. *See Jones v. Gerwens*, 874 F.2d 1534, 1540 (11th Cir. 1989) ("The law is clear that, even if a Title VII claimant did not in fact commit the violation . . . an employer successfully rebuts any prima facie case of disparate treatment by showing that it honestly believed the employee committed the violation.").[6]

---

[6] In *Nix v. WLCY Radio*, 738 F.2d 1181 (11th Cir. 1984), the plaintiff was fired for violating a rule that he, in fact, did not violate. In reversing the district court's ruling in favor of the plaintiff, the United States Court of Appeals for the Eleventh Circuit stated:

> Nix may have shown that he was fired for violating a rule that he did not violate. But [the law] does not take away an employer's right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules . . . .
> Although WLCY's decision to fire Nix, and its refusal to reconsider that decision, might seem unfair or even "incredible" to outside observers, Nix cannot prevail in his Title VII action for he has not established discriminatory intent. He has

Accordingly, Defendant is entitled to summary judgment on Plaintiff's race and gender discrimination claim.

## C.    Retaliation Claim

Plaintiff alleges that Defendant retaliated against him, asserting "Because the plaintiff pressed the issue of violence in the Montgomery public School system and fought for change, the plaintiff was retaliated against and terminated by the Montgomery Board of Education." Pl.'s Resp. (Doc. 127) at 4.   In support of his retaliation claim, Plaintiff asserts that he suffered two adverse employment actions:  1) he was placed on administrative leave; and 2) his employment was terminated.

In order to demonstrate a *prima facie* case of retaliation, Plaintiff must show that:  (1) he engaged in statutorily protected expression; (2) his employer took a materially adverse action against him; and (3) some causal relationship existed between the two events.  *See Holifield*, 115 F.3d at 1566; *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 66-67 (2006).

---

produced neither direct nor circumstantial evidence sufficient to support such a finding. In the absence of evidence pointing to race as the explanation for the employer's conduct, we must hold that Nix has failed to meet his burden of proof.

*Nix*, 738 F.2d at 1187.  *See also Elrod v. Sears, Roebuck and Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) (The inquiry . . . is limited to whether [plaintiff's supervisors] believed that [plaintiff] was guilty of [misconduct] and, if so, whether this belief was the reason behind [plaintiff's] discharge); *Moore v. Sears, Roebuck & Co.*, 683 F.2d 1321, 1323 n.4 (11th Cir. 1982) ("It is well settled in employment discrimination cases . . . that for an employer to prevail the jury need not determine that the employer was correct in its assessment of the employee's performance; it need only determine that the defendant in good faith believed plaintiff's performance to be unsatisfactory and that the asserted reason for the discharge is therefore not a mere pretext for discrimination.").

15

Defendant contends that Plaintiff cannot make out a *prima facie* case of retaliation. *See* Def.'s Br. (Doc. 123) at 25-28.[7]  However, even assuming that Plaintiff can make out a *prima facie* case of retaliation based on being placed on administrative leave and his subsequent termination, Plaintiff's claim cannot survive a motion for summary judgment. First, Defendant has provided a legitimate, non-discriminatory reason for placing Plaintiff on paid administrative leave–that Defendant was either investigating accusations made against Plaintiff or Plaintiff's own employee grievance against the school.[8]  Plaintiff was placed on paid administrative leave, beginning January 13, 2009, during the pendency of an internal investigation into his employee grievance.  Plaintiff remained on leave because, during the investigation of his employee grievance, Defendant was notified that Plaintiff had possibly violated FERPA.  Plaintiff remained on leave while Defendant investigated the possible FERPA violation.  Plaintiff has not met his burden in this case.  Aside from

---

[7] Indeed, Plaintiff, at best, presents a tenuous claim of discrimination, flip flopping between alleging he "was terminated for personal and political reasons," Am. Compl. (Doc. 5) at 8, and alleging that he was terminated for engaging in protected activity or because of his race and/or sex.  Even if Plaintiff in fact suffered an adverse employment action because of personal and political reasons, these reasons would not support a discrimination claim.  *See Watkins v. Kid One Transport*, 2012 WL 3041816, at *8 (M.D. Ala. June 21, 2012) ("The relevant issue for purposes of Title VII is not whether the employer's judgment or course of action is unreasonable, unfair, or erroneous, but whether the employer discriminated against the employee illegally on the basis of race or gender.  As long as the employer does not discriminate on an illegal basis, an employer is not in violation of Title VII for taking adverse action against an employee "for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all." (citing *Nix v. WLCY Radio*, 738 F.2d 1181, 1187 (11th Cir. 1984) (internal citation omitted)).

[8] Plaintiff was also placed on administrative leave sometime in the fall of 2008 in order to allow Defendant to investigate accusations against Plaintiff brought by a female student.  Plaintiff does not allege that this leave instance constituted an adverse employment action.  In any event, Plaintiff's EEOC charge alleges that Plaintiff suffered discrimination from January 13, 2009 to November 15, 2009.  Thus, the fall 2008 period of administrative is not part of this lawsuit.

conclusory allegations against Defendant and assertions that accusations against him are false, Plaintiff has not offered any evidence demonstrating that Defendant's legitimate reason for placing him on administrative leave was pretextual.  *See, e.g.*, *Amos v. Mobile Cnty.* *Health Dep't*, 767 F. Supp. 2d 1257, 1273-74 (S.D. Ala. 2011) (finding that the defendant's decision to place the plaintiff on administrative leave with pay while it investigated her complaint against her supervisor was not pretext for retaliation for her filing of discrimination charge).

Defendant also has proffered a legitimate non-retaliatory reason for Plaintiff's termination and, as discussed above, *see supra* Section B, Plaintiff has failed to present sufficient evidence to rebut Defendant's articulated reason.  While Plaintiff's pleadings spend much time arguing that he did not in fact violate FERPA, whether or not he committed a FERPA violation is immaterial, and he has failed to present evidence that Defendant did not in fact believe he violated the Board's FERPA policy.  Indeed, Plaintiff himself concedes it was the Board's position that he violated FERPA and that this is the reason he was terminated.  Pl.'s Dep. at 97, Def.'s Ex. A, Doc. 123-1 at 23.  Accordingly, Plaintiff's retaliation claim based on his termination is also due to fail.[9]

---

[9] To the extent Plaintiff includes his November 19, 2009 EEOC charge in his retaliation claim, this argument is due to fail.  The charge was filed after Plaintiff was terminated and Plaintiff has failed to establish that Defendants were aware that he would file a charge of discrimination when it reached its decision to terminate.  *See, e.g.*, *Johnson v. Booker T. Washington Broad. Serv., Inc.,* 234 F.3d 501, 507 (11th Cir. 2000) (affirming summary judgment in favor of employer on Title VII retaliation claim because no "causal link" possible where employee's protected expression occurred after adverse action).

Even assuming Defendants did have knowledge of Plaintiff's intent to file a charge, this too, alone, is not enough to establish a causal link.  *See, e.g.*, *Knights v. Bank United of Texas Fed. Sav. Bank*, 1999 WL 684160, at *6 (5th Cir. Aug. 13, 1999) ("Mere knowledge of possible

### D.    Hostile Work Environment

To the extent Plaintiff seeks to raise a hostile work environment claim, Defendant is entitled to summary judgment on this claim.  First, Plaintiff's November 19, 2009 Charge of Discrimination with the EEOC alleges discrimination based on race, sex, and retaliation. Def.'s Ex. L, Doc. 123-12 at 2.  Plaintiff's EEOC Charge did not raise a hostile work environment claim.  Thus, Plaintiff did not exhaust his administrative remedies with respect to a possible hostile work environment claim.[10]  Second, Plaintiff presents no argument or evidence, other than his own self-serving allegations, in support of a hostile work environment claim.  A claim of hostile work environment requires "proof that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Miller v. Kenworth of Dothan Inc.,* 277 F.3d 1269, 1275 (11th Cir. 2002).  In his response to Defendant's motion for summary judgment, Plaintiff makes only a single conclusory allegation—unsupported by any record evidence—that he was subjected to a hostile work environment, simply asserting "plaintiff conten[d]s that he was subjected to a hostile working environment during his employment with the Montgomery County

---

protected activity is not enough to raise a fact issue on the necessary causal link for a retaliation claim."); *Robinson v. AFA Serv. Corp.*, 870 F. Supp. 1077, 1085, N.D. Ga. 1994) ("Even though Defendant knew at the time of discharge that Plaintiff might pursue an age discrimination claim, this circuit does not hold that the employer's mere knowledge of a potential discrimination charge is enough."  (citing *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816 (1st Cir. 1991))).

[10]  Filing an EEOC charge and receiving a right to sue letter from the EEOC is a condition precedent to filing suit in this district court.  *See Pinkard v. Pullman-Standard, a Div. of Pullman, Inc.*, 678 F.2d 1211, 1215 (5th Cir. 1982) ("holding that receipt of a right-to-sue letter is a condition precedent to a Title VII claim").

Board of Education." Pl.'s Resp. (Doc. 127) at 1. Plaintiff's allegation, without more, is insufficient to raise an issue of material fact that would preclude summary judgment on this claim. Thus, Plaintiff has abandoned any hostile work environment claim he might have raised in his Amended Complaint. *See Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1325 (11th Cir. 2000) (finding claim abandoned where it was not briefed and argued in district court in party's response to motion for summary judgment or in party's own motion for summary judgment); *Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir. 1995) ("In opposing a motion for summary judgment, 'a party may not rely on his pleadings to avoid judgment against him. There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned."). Accordingly, and upon consideration of this precedent, the court finds that Plaintiff has abandoned his hostile work environment claim due to his failure to provide support for it in his response to Defendant's motion for summary judgment.

## IV. CONCLUSION

For the reasons stated above, it is the RECOMMENDATION of the Magistrate Judge that Defendants' Motion for Summary Judgment (Doc. 122) be GRANTED and this case be dismissed.

It is further

ORDERED that on or before **January 30, 2013**, the parties may file objections to the

Recommendation.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a *de novo* determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

Done this 16th day of January, 2013.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE